UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

JULIO SILVERIO,

Defendant.

**MEMORANDUM AND ORDER**

99-CR-1044 (LDH)

---

L<span style="font-variant:small-caps">A</span>SHANN D<span style="font-variant:small-caps">E</span>ARCY HALL, United States District Judge:

Julio Silverio ("Defendant"), proceeding pro se, moves, pursuant to 18 U.S.C. § 3583(e)(1), for an order granting early termination of his supervised release. The Government opposes the motion.

## BACKGROUND

On October 3, 2000, Defendant pleaded guilty before Judge Jack Weinstein to counts Twelve, Thirteen, and Twenty-Five of a twenty-five-count superseding indictment. (*See* Calendar Entry of Plea Hr'g, ECF No. 173; Judgment at 1, ECF No. 211.) Count Twelve charged Defendant with kidnapping a family in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1). (Superseding Indictment ¶¶ 55–56, ECF No. 91.) Count Thirteen charged Defendant with conspiracy to commit robberies in violation of 18 U.S.C. § 1951(1). (*Id.* ¶ 57.) Count Twenty-Five charged Defendant with the use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).[1] (*Id.* ¶ 69.) On May 1, 2001, Judge Weinstein

---

[1] Defendant's successive 28 U.S.C. § 2255 petition challenging his conviction on Count Twenty-Five, based on *Johnson v. United States*, 576 U.S. 591 (2015), and *United States v. Davis*, 139 S. Ct. 2319 (2019), is currently pending. (*See* Second Motion to Vacate under 28 U.S.C. 2255, ECF No. 532; Mandate of USCA, ECF No. 529.)

sentenced Defendant to 188 months' imprisonment on Counts Twelve and Thirteen, and seven years' imprisonment on Count Twenty-Five to be served consecutively with the sentence imposed on Counts Twelve and Thirteen. (Judgment at 2.) The term of imprisonment was to be followed by a five-year term of supervised release. (*Id.* at 3.) Judge Weinstein also ordered Defendant to pay a $300 assessment and $269,819.93 in restitution.[2] (*Id.* at 4.)

Defendant, who is 53 years old, began serving his term of supervised released on March 15, 2019.[3] He has now served approximately two years and eleven months of his five-year term of supervised release. In the time since Defendant was released from prison, he has obtained his commercial driver's license, as well as a forklift license. (Def.'s Feb. Ltr. at 1.) As of February 22, 2021, Defendant stated that he had been employed for two years and five months with the same company, and was working as a porter, sanitizing a Department of Motor Vehicles office in Brooklyn. (*Id.*) He was also on a waiting list to work for the Metropolitan Transportation Authority ("MTA") as a bus driver. (*Id.*) More recently, Defendant began participating in the MTA's pre-employment process, which is described in an email exchange Defendant attached to an October 24, 2021 letter in support of his motion. (*See* Def.'s Second Ltr. Supp. Mot. Early Termination ("Def.'s Oct. Ltr.") at 3–7, ECF No. 552.) According to Defendant, the MTA advised him that the MTA "has a policy that does not allow anyone that is still on probation to be employed" and requires documentation proving that Defendant is no longer on probation. (*Id.* at 1.) According to the Government, Probation has represented that Defendant resigned from his

---

[2] Restitution was imposed jointly and severally on Defendant and his co-defendants. (Judgment at 4.) Defendant was to make monthly restitution payments of $50 per month, starting one month after his release from prison. (*Id.*)

[3] According to Defendant, he "was released from prison on April 19, 2018 . . . [and] was in [a] halfway house from that time until March of 2019." (Ltr. Mot. Early Termination ("Def.'s Feb. Ltr.") at 1, ECF No. 551.)

previous employment in anticipation of receiving employment with the MTA. (Gov.'s Resp. Opp'n Mot. Early Termination ("Gov.'s Opp'n") at 5, ECF No. 559.) Perhaps as a result of his resignation, Defendant failed to make restitution payments in September and October 2021. (*Id.*) According to the Government, Defendant had paid $1,650 in restitution as of December 7, 2021, and was making regularly scheduled restitution payments of $50 per month prior to September 2021. (*Id.* at 3.) A balance of $262,823.93 in restitution remained outstanding, as of December 7, 2021. (*Id.*)

By letters dated February 22, 2021, and October 24, 2021,[4] Defendant moved for an order terminating the remaining period of his supervised release. (*See* Def.'s Feb. Ltr.; Def.'s Oct. Ltr.) On December 7, 2021, the Government filed its opposition, and on January 5, 2022, Defendant filed a reply. (*See* Gov.'s Opp'n; Def.'s Reply Supp. Mot. Early Termination ("Def.'s Reply"), ECF No. 560.)

## DISCUSSION

Pursuant to 18 U.S.C. § 3583(e)(1), a court may,

> after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e)(1). In determining whether early termination of supervised release is warranted, the Court must first consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, *id.* at § 3553(a)(1); (2) the need to deter criminal

---

[4] These letters were received by the Court on March 15, 2021, and November 1, 2021, respectively.

3

conduct, *id.* at § 3553(a)(2)(B); (3) the need to protect the public from further crimes of the defendant, *id.* at § 3553(a)(2)(C); (4) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, *id.* at § 3553(a)(2)(D); (5) the kinds of sentence and the sentencing range established for defendants with similar characteristics under the applicable Sentencing Commission guidelines and policy statements, *id.* at § 3553(a)(4); (6) any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing, *id.* at § 3553(a)(5); (7) the need to avoid unwarranted sentence disparities among similar defendants, *id.* at § 3553(a)(6); and (8) the need to provide restitution to any victims of the offense, *id.* at § 3553(a)(7). "Early termination is not warranted as a matter of course; on the contrary, it is only 'occasionally' justified due to 'changed circumstances' of a defendant, such as 'exceptionally good behavior.'" *United States v. Sheckley*, 129 F.3d 114, 1997 WL 701370 (Table) (2d Cir. 1997) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)) (affirming district court's denial of motion for early termination of supervised release where defendant had complied with terms of supervised release but there was no evidence of "exceptionally good behavior" to substantiate such "changed circumstances" as might warrant early termination).

In support of his motion, Defendant argues that he has met all the conditions and requirements of his supervised release, has worked to meet certain employment goals, and will not be able to obtain employment with the MTA as long as he remains on supervised release. (Def.'s Feb. Ltr. at 1–2; Def.'s Oct. Ltr. at 1.) In response, the Government argues that the relevant § 3553(a) factors weigh against granting Defendant's motion and should not be weighed differently today than they were at the time of sentencing. (Gov.'s Opp'n at 4.) Specifically, the

4

Government argues that the nature of Defendant's crimes, which involved multiple violent robberies and kidnappings, weighs strongly against disrupting the term of supervised release imposed by Judge Weinstein.  (*Id.*)  Furthermore, the Government argues that Defendant's recent failure to comply with the conditions of his supervised release, as well as the interests of justice, weigh against the early termination of Defendant's supervised release.  (*Id.* at 5.)  After review of the § 3553(a) factors, which must inform the Court's consideration, the Court agrees with the Government.

At least two of the relevant § 3553(a) factors—the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1), and the need to provide restitution, *id.* at § 3553(a)(7)—weigh heavily against the termination of Defendant's supervised release.  Defendant played a managerial role in a criminal enterprise that carried out violent armed robberies and kidnappings.  For example, the June 1999 robbery and kidnapping involved Defendant holding an employee of a check-cashing store hostage overnight.  (Sealed Presentence Investigation Report, as Addended ("PSR") ¶¶ 31–32, ECF No. 557; Judgment at 6 (adopting the factual findings in the presentence report).)  The victim was restrained, threatened, and assaulted.  (*Id.* ¶ 33.)  Defendant and his associates then kidnapped the victim's wife and two minor children.  (*Id.* ¶ 34; Plea Hr'g Tr. at 16:7–15, ECF No. 219.)  Defendant and/or his associates brandished or used a firearm in connection with this kidnapping.  (Plea Hr'g Tr. at 15:12–17.)  Eventually, Defendant and his associates attempted to rob the check-cashing store.  (PSR ¶ 35.)  As set forth in the Government's opposition to Defendant's instant motion, this was not the only kidnapping or robbery in which Defendant participated.  Defendant's June 1999 crime was in fact preceded by numerous robberies, some of which also involved kidnappings.

In February 1998, Defendant and his associates forcibly entered a family's apartment in a building where Defendant's associate worked as a doorman. (Gov.'s Opp'n at 2.) Defendant and his associates held the family, including a minor child, hostage at gunpoint for approximately six hours while they robbed them. (*Id.*) In early 1999, Defendant and his associates, in an attempt to rob a check cashing store, kidnapped the store owner's wife and held her hostage until the store owner gave them access to the store's safe. (*Id.*) In April 1999, in the course of committing another robbery, Defendant and his associates forced a check-cashing store employee into a vehicle at gunpoint and drove him to a deserted location where they threatened him and his family. (*Id.*) Defendant and his associates later drove the victim back to the check cashing store where they forced him to open the safe. (*Id.*) Defendant's history of serious offenses pre-dating the conviction underlying the instant motion bears heavily on the Court's consideration of the relevant § 3553(a) factors.

Next, the Court considers restitution. Restitution is intended to compensate a defendant's victims for losses suffered as a result of the defendant's conduct. As of December 7, 2021, Defendant still owed $262,823.93 in restitution, including to the individual victims of Defendant's June 1999 kidnapping. (PSR ¶ 179.) This fact also weighs in favor of continuing Defendant's current term of supervision. 18 U.S.C. § 3553(a)(7). Defendant has not persuaded the Court that early termination of his supervised release would comport with the relevant § 3553(a) factors, including, but not limited to, the seriousness of Defendant's offenses.[5]

---

[5] In cases decided under 18 U.S.C. § 3582(c)(1)(A), also known as the compassionate release statute, the Second Circuit has held that, "because a § 3553(a) assessment favorable to the defendant is a necessary and independent requirement for a sentence reduction, a district court may deny relief in the absence of such a favorable assessment even without conclusively deciding that a defendant has proffered extraordinary and compelling reasons for relief." *United State v. Johnson*, No. 21-241-CR, 2022 WL 102075, at *2 (2d Cir. Jan. 11, 2022) (citing *United States v.*

6

Defendant's arguments regarding his conduct are likewise unpersuasive. While Defendant's post-release conduct is, for the most part, commendable, "[e]xceptionally good behavior is not established by mere compliance with the terms of supervised release, which is what is expected . . . and does not warrant early termination." *United States v. Stein*, No. 09-CR-377, 2020 WL 4059472, at *2 (E.D.N.Y. July 19, 2020) (quotation marks omitted). And in any event, Defendant cannot show strict compliance with the terms of his supervised release. The conditions of his release include both maintaining full-time employment and making restitution payments. (Judgment at 3.) Yet, Defendant inexplicably resigned from his full-time job in anticipation of receiving a position with the MTA, having no assurances that such a position would be available to him (or even offered). (Gov.'s Opp'n at 5.) To the contrary, Defendant was well aware that, absent a court order terminating his supervised release, he would not be eligible for the position. (Def.'s Oct. Ltr. at 1.) Thereafter, Defendant failed to make his monthly restitution payments in September and October of 2021. (Gov.'s Opp'n at 1.) The Court is aware that Defendant has since found new employment, which is commendable (and required). (Def.'s Reply at 1.) The Court also finds encouraging Defendant's involvement with

---

*Keitt*, 21 F.4th 67, 69 (2d Cir. 2021)); *see also United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) (holding that a finding of extraordinary and compelling reasons is necessary, but not sufficient to *grant* a defendant's motion for compassionate release). Accordingly, "when a district court denies a defendant's motion under § 3582(c)(1)(A) in sole reliance on the applicable § 3553(a) sentencing factors, it need not also determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction." *Keitt*, 21 F.4th at 69. This rule applies with equal force to the instant motion in light of the similarity in language between the statute governing compassionate release motions and that governing motions for early termination of supervised release. *Compare* 18 U.S.C. § 3582(c)(1)(A) (permitting a court to reduce a term of imprisonment, "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction[,] or [defendant meets certain criteria and the reduction is consistent with applicable policy statements]", *with* 18 U.S.C. § 3583(e)(1) (permitting the court to terminate a term of supervised release "after considering the factors set forth in [the relevant subsections of § 3553(a)], if it is satisfied that such action is warranted by the conduct of the defendant release and in the interest of justice."). The Court will nevertheless address whether Defendant has demonstrated that termination is warranted by his conduct or in the interest of justice.

his church community, the support offered by those who submitted letters on Defendant's behalf, and Defendant's expressed remorse. (*See* Def.'s Reply at 1–2; *id.*, Ex. A (Ltrs. Supp. Def.'s Mot. Early Termination), ECF No. 560-1.) However, Defendant's conduct does not rise to the level of "exceptionally good behavior" warranting termination.

Defendant further argues that remaining on supervised release will prevent Defendant from any opportunity of employment with the MTA. To be sure, district courts have granted early termination of supervised release where continued supervision prevented a defendant from advancing in his field of employment or obtaining a promotion. *See, e.g., United States v. Bennett*, No. 11-CR-424, 2021 WL 4798827 (E.D.N.Y. Oct. 14, 2021); *United States v. Harris*, 689 F. Supp. 2d 692, 692 (S.D.N.Y. 2010). In those cases, the court analyzed each defendant's employment opportunity as a "changed circumstance" under the interests of justice factor of the § 3583(e)(1) analysis, only after finding that the defendant's conduct and the § 3553(a) factors also weighed in favor of termination. In *United States v. Bennett*, for example, the court granted a defendant's motion for early termination of supervised release so that the defendant could secure a job promotion. 2021 WL 4798827, at *1. There, the court found that the offer of a promotion presented a change in circumstances that warranted early termination. *Id.* This determination, however, was made against a backdrop quite different than that in the instant motion. In *Bennett*, unlike here, the court found that the relevant § 3553(a) factors weighed in favor of termination and the defendant had fulfilled his court-ordered financial obligations and complied with the terms and conditions of his supervision. Moreover, the government did not object to the defendant's motion. *Id.*

In *United States v. Harris*, the court granted a defendant's § 3583(e)(1) motion where the defendant sought termination so that he could advance in his field of employment and be better positioned to avoid losing his job during an economic downturn. 689 F. Supp. 2d at 692. Not only was the defendant in strict compliance with the terms of his supervised release, but the defendant's post-conviction conduct was also "beyond reproach." *Id*. at 694. Furthermore, the government's only opposition to granting the defendant's motion was that doing so would terminate the condition that he comply with his restitution obligations. *Id*. The court rejected that argument for two reasons: First, the defendant's victims were a consortium of sophisticated banks whose existence and business activities survived the defendant's fraud; and second, the government could not reasonably expect to achieve, during the defendant's remaining two years of supervised release, "any *meaningful* redress of the banks' $200 million loss . . . ." *Id*. at 695. Here, unlike in *Harris*, Defendant's victims include individuals who were kidnapped and robbed by Defendant and his co-conspirators. The Court will not go so far as to assume that any remaining restitution payments would not be meaningful to those individuals. And, significantly, unlike the offenses in *Harris* and *Bennett*, Defendant's offenses were violent in nature and involved the use of a firearm.

Although the Court commends Defendant's efforts to obtain a position with the MTA, Defendant's potential employment opportunity does not outweigh the other considerations that must factor into the Court's determination. Ultimately, the Court is not satisfied that early termination of Defendant's supervised release is warranted and, therefore, the Court will not disrupt the five-year term imposed by Judge Weinstein.

Finally, the Court is mindful that Defendant's successive § 2255 petition is pending. But even if the § 2255 petition were granted, that outcome would not change the Court's analysis here. It is not a foregone conclusion that Defendant's sentence would be reduced even if his petition were successful. But more to the point, a reduction in a custodial sentence does not automatically result in a reduction in the period of supervised release, for which Defendant would still be statutorily eligible for a five-year term. *See* 18 U.S.C. §§ 3583(b)(1), 3559(a)(1), 1959(a)(1).

## CONCLUSION

For the foregoing reasons, Defendant's motion for early termination of his supervised release is DENIED.

SO ORDERED.

Dated: Brooklyn, New York  
      February 17, 2022

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge

10